In the United States District Court
for the District of Connecticut

| | |
|---|---|
| Faiqa Mirzai and Fariha Mirzai, | |
| *On behalf of themselves and those similarly situated*, | Case No. |
| Plaintiffs, | |
| v. | |
| ADT Pizza LLC; ADT Management LLC; Adam Diamond; David Tetens; John Doe 1–10; Doe Corporation 1–10 | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint

**Introduction**

1.      Faiqa Mirzai and Fariha Mirzai, on behalf of themselves and all similarly situated individuals, bring this action against Defendants ADT Pizza LLC; ADT Management LLC; Adam Diamond; David Tetens; John Doe 1–10; and Doe Corporation 1–10 ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and unjust enrichment.

2.      Defendants operate 180 Pizza Hut franchises in Texas, Louisiana, Ohio, Tennessee, Alabama, Georgia, North Carolina, South Carolina, and Florida (the "Defendants' Pizza Hut stores").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA.

5.      All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiffs, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.      Plaintiffs also bring this action on behalf of themselves and current and former delivery drivers in Texas, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

**Jurisdiction and Venue**

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiffs**

**Faiqa Mirzai**

10.      Plaintiff Faiqa Mirzai is a resident of Texas.

2

11.    Plaintiff is an "employee" of all of the Defendants as defined in the FLSA.

12.    Plaintiff has given written consent to join this action.

**Fariha Mirzai**

13.    Plaintiff Fariha Mirzai is a resident of Texas.

14.    Plaintiff is an "employee" of all of the Defendants as defined in the FLSA.

15.    Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

**ADT Pizza LLC**

16.    Defendant ADT Pizza LLC is a limited liability company incorporated in the state of Delaware with its principal place of business in Connecticut.

17.    ADT Pizza LLC was incorporated in Delaware.

18.    ADT Pizza LLC is headquartered at 50 Charles Street, Westport, CT 06880.

19.    ADT Pizza LLC maintains its principal place of business in Westport, CT.

20.    ADT Management LLC is a principal of ADT Pizza LLC.

21.    ADT Pizza LLC owns and operates 180 Pizza Hut franchise stores.

22.    ADT Pizza LLC is owned by Adam Diamond.

23.    ADT Pizza, LLC is owned by David Tetens.

24.    ADT Pizza LLC is operated by Adam Diamond.

25.    ADT Pizza, LLC is operated by David Tetens.

26.    ADT Pizza LLC is the entity name on Plaintiffs' paystubs.

27.    ADT Pizza LLC has substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

3

28.     ADT Pizza LLC applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at its location, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

29.     ADT Pizza LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

30.     At all relevant times, ADT Pizza LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31.     ADT Pizza LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

32.     At all relevant times, ADT Pizza LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.     ADT Pizza LLC's gross revenue exceeds $500,000 per year.

**ADT Management LLC**

34.     Defendant ADT Management LLC is a limited liability company incorporated in the state of Delaware.

35.     ADT Management LLC is a principal of ADT Pizza LLC.

36.     ADT Management LLC owns and operates 180 Pizza Hut franchise stores.

37.     ADT Management LLC has substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

38.    ADT Management LLC applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at its location, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

39.    ADT Management LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

40.    At all relevant times, ADT Management LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

41.    ADT Management LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

42.    At all relevant times, ADT Management LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

43.    ADT Management LLC's gross revenue exceeds $500,000 per year.

**Adam Diamond**

44.    Defendant Adam Diamond is the CEO and CFO of Defendants' Pizza Hut stores.

45.    Adam Diamond resides in Connecticut.

46.    Adam Diamond is a Pizza Hut franchisee.

47.    Upon information and belief, Adam Diamond has entered into a franchise agreement with Pizza Hut relating to Defendants' Pizza Hut stores.

48.    Adam Diamond is an operator of Defendants' Pizza Hut stores.

49.     Adam Diamond is individually liable to the delivery drivers at Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Pizza Hut stores, serves as the CEO and CFO of the Defendants' Pizza Hut stores, ultimately controls significant aspects of Defendants' Pizza Hut stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

50.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had financial control over the operations at the Defendants' Pizza Hut stores.

51.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had a role in significant aspects of the Defendants' Pizza Hut stores day to day operations.

52.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had control over the Defendants' Pizza Hut stores pay policies.

53.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence over delivery driver pay.

54.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

55.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

56.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to transfer the assets and liabilities of the Defendants Pizza Hut stores.

57.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

58.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to enter into contracts on behalf of the Defendants' Pizza Hut stores.

59.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to close, shut down, and/or sell the Defendants' Pizza Hut stores.

60.     At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has authority over the overall direction of Defendants' Pizza Hut stores and is responsible for its operations.

61.     The Defendants' Pizza Hut stores functions for Adam Diamond's profit.

62.     Adam Diamond has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**David Tetens**

63.     Defendant David Tetens is the COO of Defendants' Pizza Hut stores.

64.     David Tetens is a Pizza Hut franchisee.

65.    Upon information and belief, David Tetens has entered into a franchise agreement with Pizza Hut relating to Defendants' Pizza Hut stores.

66.    David Tetens is an operator of Defendants' Pizza Hut stores.

67.    David Tetens is individually liable to the delivery drivers at Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Pizza Hut stores, serves as the COO of the Defendants' Pizza Hut stores, ultimately controls significant aspects of Defendants' Pizza Hut stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

68.    At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had financial control over the operations at the Defendants' Pizza Hut stores.

69.    At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had a role in significant aspects of the Defendants' Pizza Hut stores day to day operations.

70.    At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had control over the Defendants' Pizza Hut stores pay policies.

71.    At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence over delivery driver pay.

72.    At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

73.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

74.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

75.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

76.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to enter into contracts on behalf of the Defendants' Pizza Hut stores.

77.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to close, shut down, and/or sell the Defendants' Pizza Hut stores.

78.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has authority over the overall direction of Defendants' Pizza Hut stores and is responsible for its operations.

79.     The Defendants' Pizza Hut stores functions for David Tetens' profit.

80.     David Tetens has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1–10**

81.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and

qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

82.    Upon information and belief, Adam Diamond and/or David Tetens own and operate, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores.

83.    Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

84.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

85.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

86.    Upon information and belief, Adam Diamond and/or David Tetens have entered into co-owner relationships with a number of their managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

87.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

88.    During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

89.     The primary function of the Defendants' Pizza Hut stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

90.     Defendants' Pizza Hut stores employ delivery drivers.

91.     Plaintiffs and the similarly situated persons that Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores.

92.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

93.     Drivers at the Defendants' Pizza Hut stores work "dual jobs".

94.     Delivery drivers' inside job duties were not completed simultaneously with their tipped job duties.

95.     Delivery drivers' inside job duties were not related to the tipped job duties.

96.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

97.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they work inside the restaurant.

98.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

99.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

100.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

101.    Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

102.    Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

103.    The Defendants' Pizza Hut stores do not reimburse the delivery drivers' cellphone expenses.

104.    The Defendants' Pizza Hut stores do not track or record the delivery drivers' cellphone expenses.

105.    Defendants reimburse delivery drivers' automobile expenses based on a per mile rate.

106.    Defendants' Pizza Hut stores do not track or record the delivery drivers' actual automobile expenses.

107.    Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

108.    Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

109.    Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

110.    Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

111.    Defendants do not collect receipts of delivery drivers' automobile registration costs.

112.    Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

113.    Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut stores.

114.    Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

115.    Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

116.    Defendants' Pizza Hut stores do not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

117.    Defendants' Pizza Hut stores do not even reasonably approximate the delivery drivers' automobile expenses.

118.    Defendants reimburse delivery drivers at Defendants' Pizza Hut stores using a per-mile reimbursement rate that is less than the IRS standard business mileage rate.

119.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2020: 57.5 cents/mile
b.    2021: 56 cents/mile
c.    2022: 58.5 cents/mile
d.    2022: 62.5 cents/mile
e.    2023: 65.5 cents/mile

120.    The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

121.    The delivery drivers at Defendants' Pizza Hut stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

122.    Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

123.    Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

124.    Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

125.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

126.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

127.    All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar

distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

128.    Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

129.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

130.    Defendants have willfully failed to pay federal minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

131.    Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

132.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

133.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

**Plaintiffs' Individual Factual Allegations**

**Faiqa Mirzai**

134.    Plaintiff Faiqa Mirzai had worked for Defendants as a pizza delivery driver at the Defendants' Pizza Hut stores from October 2021 to January 2023.

135.    Plaintiff Faiqa Mirzai worked dual jobs—one inside the store, and one outside the store.

136.    Plaintiff Faiqa Mirzai delivered pizza and other food items to Defendants' customers' homes and businesses.

137.    When she was not making deliveries, Plaintiff Faiqa Mirzai worked inside the restaurant, completing tasks such as taking orders, doing dishes, sweeping, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

138.    Plaintiff Faiqa Mirzai's inside job duties were not completed at the same time as her on-the-road job duties.

139.    Plaintiff Faiqa Mirzai's inside job duties were not related to her tipped job duties.

140.    Plaintiff Faiqa Mirzai was required to use her own car to deliver pizzas.

141.    Plaintiff Faiqa Mirzai was required to use her own cellphone when delivering pizzas.

142.    Plaintiff Faiqa Mirzai made $7.25 per hour for all hours worked until a few months ago.

143.    Plaintiff Faiqa Mirzai then made $8.00 per hour for all hours worked until the end of her employment.

144.    Plaintiff Faiqa Mirzai was reimbursed per mile while completing deliveries for Defendants.

145.    When Plaintiff Faiqa Mirzai started working for Defendants, she made $.34 per mile.

146.     For a short time, Plaintiff Faiqa Mirzai's rate went up to $.42 per mile but then dropped back down to $.34 per mile.

147.     Plaintiff Faiqa Mirzai was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

148.     Plaintiff Faiqa Mirzai was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

149.     Plaintiff Faiqa Mirzai was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

150.     Plaintiff Faiqa Mirzai purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incurred cellphone and data charges all for the primary benefit of Defendants.

151.     Defendants did not track the actual expenses incurred by Plaintiff.

152.     Defendants did not ask Plaintiff Faiqa Mirzai to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

153.     Defendants' Pizza Hut stores did not collect receipts from Plaintiff Faiqa Mirzai related to the expenses she incurred while completing deliveries.

154.     Defendants did not collect receipts of Plaintiff Faiqa Mirzai's gasoline purchases during weeks when she worked for Defendants.

155.    Defendants did not collect receipts of Plaintiff Faiqa Mirzai's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

156.    Defendants did not collect receipts of Plaintiff Faiqa Mirzai's monthly or annual automobile insurance costs.

157.    Defendants did not collect receipts of Plaintiff Faiqa Mirzai's automobile registration costs.

158.    Defendants did not collect receipts of Plaintiff Faiqa Mirzai's automobile financing or purchase costs.

159.    Defendants did not collect any other receipts from Plaintiff Faiqa Mirzai related to the automobile expenses she incurred as a delivery driver at Defendants' Pizza Hut stores.

160.    Defendants did not track the cellphone expenses incurred by Plaintiff.

161.    Defendants did not ask Plaintiff Faiqa Mirzai to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

162.    Defendants did not collect receipts of Plaintiff Faiqa Mirzai's cellphone data plan expenses.

163.    Defendants did not reimburse Plaintiff Faiqa Mirzai for her cellphone expenses.

164.    Defendants did not reimburse Plaintiff Faiqa Mirzai based on her actual delivery-related expenses.

165.    Plaintiff Faiqa Mirzai was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

166.     During all relevant times, Defendants have failed to adequately reimburse Plaintiff Faiqa Mirzai for automobile and other job-related expenses.

167.     Plaintiff Faiqa Mirzai regularly made approximately 4-5 deliveries per hour during the hours she worked as a delivery driver.

168.     Plaintiff Faiqa Mirzai regularly drove approximately 7 miles round trip per delivery.

169.      In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.245 per mile ($.585 - $.34). Considering Plaintiff's estimate of 7 miles per delivery, Defendants under-reimbursed her $1.72 per delivery ($.245 x 7 miles), and $7.74 per hour (4.5 deliveries per hour).

170.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Faiqa Mirzai minimum wage as required by law.

171.     Defendants have been unjustly enriched by Plaintiff Faiqa Mirzai in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

172.     Defendants have been unjustly enriched by Plaintiff Faiqa Mirzai in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

**Fariha Mirzai**

173.     Plaintiff Fariha Mirzai had worked for Defendants as a pizza delivery driver at the Defendants' Pizza Hut stores from October 2020 through January 2023.

174.     Plaintiff Fariha Mirzai worked dual jobs—one inside the store, and one outside the store.

175.    Plaintiff Fariha Mirzai's inside job duties were not completed at the same time as her on-the-road job duties.

176.    Plaintiff Fariha Mirzai's inside job duties were not related to her tipped job duties.

177.    Plaintiff Fariha Mirzai delivered pizza and other food items to Defendants' customers' homes and businesses.

178.    When she was not making deliveries, Plaintiff Fariha Mirzai worked inside the restaurant, completing tasks such as taking orders, doing dishes, sweeping, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

179.    Plaintiff Fariha Mirzai was required to use her own car to deliver pizzas.

180.    Plaintiff Fariha Mirzai was required to use her own cellphone when delivering pizzas.

181.    Plaintiff Fariha Mirzai made $7.25 per hour for all hours worked until a few months ago.

182.    Plaintiff Fariha Mirzai then made $8.00 per hour for all hours worked until toward the end of employment.

183.    Plaintiff Fariha Mirzai then received a raise to $8.50 per hour for all hours worked until the end of her employment.

184.    Plaintiff Fariha Mirzai was reimbursed per mile while completing deliveries for Defendants.

185.    Plaintiff Fariha Mirzai made $.37 per mile.

186.    Plaintiff Fariha Mirzai was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

187.    Plaintiff Fariha Mirzai was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

188.    Plaintiff Fariha Mirzai was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

189.    Plaintiff Fariha Mirzai purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incurred cellphone and data charges all for the primary benefit of Defendants.

190.    Defendants did not track the actual expenses incurred by Plaintiff.

191.    Defendants did not ask Plaintiff Fariha Mirzai to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

192.    Defendants' Pizza Hut stores did not collect receipts from Plaintiff Fariha Mirzai related to the expenses she incurred while completing deliveries.

193.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's gasoline purchases during weeks when she worked for Defendants.

194.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

195.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's monthly or annual automobile insurance costs.

196.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's automobile registration costs.

197.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's automobile financing or purchase costs.

198.    Defendants did not collect any other receipts from Plaintiff Fariha Mirzai related to the automobile expenses she incurred as a delivery driver at Defendants' Pizza Hut stores.

199.    Defendants did not track the cellphone expenses incurred by Plaintiff.

200.    Defendants did not ask Plaintiff Fariha Mirzai to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

201.    Defendants did not collect receipts of Plaintiff Fariha Mirzai's cellphone data plan expenses.

202.    Defendants did not reimburse Plaintiff Fariha Mirzai for her cellphone expenses.

203.    Defendants did not reimburse Plaintiff Fariha Mirzai based on her actual delivery-related expenses.

204.    Plaintiff Fariha Mirzai was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

205.    During all relevant times, Defendants have failed to adequately reimburse Plaintiff Fariha Mirzai for automobile and other job-related expenses.

206.    Plaintiff Fariha Mirzai regularly made approximately 4-5 deliveries per hour during the hours she worked as a delivery driver.

207.    Plaintiff Fariha Mirzai regularly drove approximately 6-7 miles round trip per delivery.

208.    In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.215 per mile ($.585 - $.37). Considering Plaintiff's estimate of 6.5 miles per delivery, Defendants under-reimbursed her $1.40 per delivery ($.215 x 6.5 miles), and $6.30 per hour (4.5 deliveries per hour).

209.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Fariha Mirzai minimum wage as required by law.

210.    Defendants have been unjustly enriched by Plaintiff Fariha Mirzai in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

211.    Defendants have been unjustly enriched by Plaintiff Fariha Mirzai in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

### Collective Action Allegations

212.    Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

213.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to

23

reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs'

claims are essentially the same as those of the FLSA Collective.

214.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

215.    Defendants are aware or should have been aware that federal law required them

to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the

trade."

216.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

217.    The First Count is properly brought under and maintained as an opt-in collective

action under 29 U.S.C. § 216(b).

218.    In recognition of the services Plaintiffs have rendered and will continue to render

to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this

action.

**Class Action Allegations**

219.    Plaintiffs bring the Second Count under Federal Rule of Civil Procedure 23, on behalf

of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza
> Hut stores in the State of Texas between the date two years prior to the filing of the
> original complaint and the date of final judgment in this matter ("Rule 23 Unjust
> Enrichment Class").

220.    Excluded from the Rule 23 Unjust Enrichment Class are Defendants' legal

representatives, officers, directors, assigns, and successors, or any individual who has, or who at

any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom

this case is assigned and any member of the Judges' immediate family; and all persons who will

submit timely and otherwise proper requests for exclusion from the Rule 23 Unjust Enrichment Class.

221.    The number and identity of the Rule 23 Unjust Enrichment Class members are ascertainable from Defendants' records.

222.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Unjust Enrichment Class member and the benefits conferred by the Rule 23 Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

223.    For the purpose of notice and other purposes related to this action, the Rule 23 Unjust Enrichment Class members' names and contact information are readily available from Defendants.

224.    Notice can be provided by means permissible under Rule 23 for the Rule 23 Unjust Enrichment Class members.

225.    The Rule 23 Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

226.    The disposition of the Rule 23 Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

227.    Upon information and belief, there are more than 40 Rule 23 Unjust Enrichment Class members.

228.    Plaintiffs' claims are typical of those claims which could be alleged by any class member in the Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by a Rule 23 Unjust Enrichment Class member in separate actions.

229.    Plaintiffs and the Rule 23 Unjust Enrichment Class members have unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

230.    Plaintiffs and the Rule 23 Unjust Enrichment Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

231.    By seeking to represent the interests of the Rule 23 Unjust Enrichment Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

232.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Unjust Enrichment Class and have no interests antagonistic to the Rule 23 Unjust Enrichment Class.

233.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

234.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Unjust Enrichment Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Unjust Enrichment Class members to redress the wrongs done

to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Unjust Enrichment Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Unjust Enrichment Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

235.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

236.    Common questions of law and fact exist as to the Rule 23 Unjust Enrichment Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

a.    Whether Plaintiffs and the Rule 23 Class members were subject to a common expense reimbursement policy;

b.    Whether Plaintiffs and the Rule 23 Unjust Enrichment Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.    Whether Plaintiffs and the Rule 23 Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d.  Whether Plaintiffs and the Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e.  Whether Defendants collected and maintained records of Plaintiffs and the Rule 23 Unjust Enrichment Class members' actual vehicle expenses;

f.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Unjust Enrichment Class members for their actual expenses;

g.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Unjust Enrichment Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Unjust Enrichment Class members based on a reasonable approximation of the expenses they incurred;

i.  Whether Defendants properly reimbursed Plaintiffs and the Rule 23 Unjust Enrichment Class members;

j.  Whether Plaintiffs and the Rule 23 Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k.  Whether Defendants accepted the benefits conferred on them by Plaintiffs and the Rule 23 Unjust Enrichment Class;

l.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiffs and the Rule 23 Unjust Enrichment Class without compensating for it;

m.  The nature and extent of class-wide injury and the measure of damages for those injuries.

237.    In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Unjust Enrichment Class, Plaintiffs will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**

**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

238.　　Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

239.　　Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

240.　　Defendants pay Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

241.　　Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

242.　　By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

243.　　Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

244.　　As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and Rule 23 Unjust Enrichment Class)**

245.    The Rule 23 Unjust Enrichment Class members at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

246.    Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Unjust Enrichment Class members.

247.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

248.    Plaintiffs and the Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 2 years preceding the filing of this complaint.

**WHEREFORE**, Plaintiffs Faiqa Mirzai and Fariha Mirzai pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiffs as representatives of the Rule 23 Unjust Enrichment Class,

and counsel of record as Class Counsel for the Class.

E.      Liquidated damages under the FLSA.

F.      An award of restitution as a result of unjust enrichment to the Rule 23 Unjust

Enrichment Class.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Robert Mitchell*
Robert B. Mitchell (ct02662)
Jessica Slippen (ct25765)
Mitchell & Sheahan, PC
999 Oronoque Lane, Suite 203
Stratford, CT 06614
Telephone: (203) 873-0240
Facsimile: (203) 873-0235
*rbmitchell@mitchellandsheahan.com*

and

Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*

*Counsel for Plaintiffs*

31

**JURY DEMAND**

Plaintiffs hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Robert Mitchell_____
Robert B. Mitchell